Hardee & Co. *vs.* Langford.—Statement of Case.

L. A. HARDEE & CO., APPELLANTS, VS. GEORGE LANGFORD, APPELLEE.

1. The provision contained in the 4th paragraph of the 3rd., Section of the Act of 1834, (Thomp. Dig., 370,) which requires that " the evidence shall be confined strictly and exclusively to the state of facts alleged in the plaintiff's affidavit, as they existed at the time of issuing the attachment " has reference only to cases *pending* at the time of the passage of the Act.

2. The decision in the case of Kennedy vs. Mitchell, (4 Florida R., 457) which is an adjudication upon the proviso contained in the 5th paragraph of the same section, referred to and approved.

3. It is a general rule to be observed in the construction of Statutes, that where they provide extraordinary remedies, they should be strictly construed. But in view of the fact that there exists no provision for " *special bail* " in this State, that rule may be somewhat relaxed in its application to the attachment laws, whenever by so doing the cause of justice may be advanced,

4. A debtor may by his declarations of intention, or avowal of design, in regard to the *fraudulent* disposal of his property, bring himself as effectually under

the operation of the Statute, as by the commission of any overt act, either consummated or in progress of consummation.

5. It is a safe rule to be adopted in respect to the admission of evidence, on the trial of the issue of *fraud or no fraud*, arising under the attachment law, that the evidence whether consisting of overt acts, or mere declarations of intention, shall not have transpired at so remote a period as to prevent their becoming a part of the *res gestæ*, and the determination of this, must be left to the sound discretion of the Judge, presiding at the trial of the issue·

Appeal from the Circuit Court of Columbia County, Hon. J. J. Finley presiding.

This was an action of assumpsit instituted by appellants by attachment. The ground alleged in the affidavit on which the writ of attachment issued, is " that the said George Langford is fraudulently disposing of his property for the purpose of avoiding the payment of his just debts."

The defendant Langford afterwards made affidavit, declaring the said allegation of the plaintiff upon which the writ of attachment issued, to be untrue.

Previous to the trial of the issue thus joined, the plaintiffs moved a continuance of the cause, based on an affidavit, alleging that " John B. Smith is a material witness for them and that they could not safely go to trial without the testimony of said witness ; that said witness has been subpœnaed and is not absent by the consent or procurement of plaintiffs ; that they expected to be able to prove by said witness that the defendant proposed to said witness to claim his (Defendant's) horse, to prevent said horse being taken for defendant's debts, and that said proposition was made to said witness but a few days or a week before the attachment was commenced, and that the affidavit was not made for the purpose of delay." The Court over-ruled the motion, to which over-ruling, plaintiffs by their counsel excepted.

On the trial of the cause, the plaintiffs introduced as a witness, Wiley Langford, who was asked: did the defend-

ant offer to dispose of his property at or about the time the writ of attachment issued ? To which he answered: "that about three weeks before or more, defendant offered to sell him a horse." The Court then refused to allow him to testify any further in reference to the offer to sell the horse to witness at that time, to which the Plaintiffs excepted.— Plaintiffs' counsel then asked the witness : " what did defendant say at that time was his intention in attempting to dispose of his property?" The Court over-ruled the question and plaintiffs' counsel excepted. Plaintiffs' counsel then asked witness to state what defendant said about disposing of his buggy; to which he answered : "on the same evening that defendant bought the buggy of plaintiffs', he, witness, had a conversation with defendant about the disposition of his horse." Plaintiffs' counsel then asked witness to state what he knew about plaintiffs' going out to defendant's to purchase a horse." Witness answered that "two or three weeks before the writ of attachment issued Goodbread, one of the plaintiffs, went to defendant to purchase a horse. ' Plaintiffs counsel then asked witness what took place at that time between plaintiffs and defendant; the Court over-ruled the question and plaintiffs excepted.

The Jury having found the issue in favor of the defendant, judgment was rendered accordingly, and plaintiffs prayed an appeal. Appellants assigned the following errors.

First; The Court erred in refusing a continuance.

Second; The Court erred in refusing to let witness testify further as to what took place three weeks or more before writ issued.

Third; The Court erred in refusing to allow witness to testify in answer to the interrogatory as to the intention of

defendant in disposing of his property, it being three weeks or more before writ issued.

Fourth; The Court erred in refusing to allow witness to testify as to what took place between plaintiffs and defendant two or three weeks before attachment writ issued, at the time plaintiff Goodbread went to defendant to purchase a horse.

DUPONT J., delivered the opinion of the Court.

This case comes up from the Circuit Court of Columbia county, and should properly have been heard at the last term of the Court held at Jacksonville, in the Eastern Judicial District; but upon the application of the Counsel and for their accommodation, we have consented to have it docketed and heard at the present Term in the city of Tallahassee.

The point in controversy arose upon a motion to dissolve an attachment which had been sued out by the plaintiffs, and levied upon the property of the defendant. The ground set forth in the affidavit and upon which the writ was issued is, that "the said George Langford is fraudulently disposing of his property, for the purpose of avoiding the payment of his just debts;" and is in due form and in strict acccordance with the terms of the Statute.

The Statute provides, that " such writ shall in no case be issued, unless the party applying for the same, or his Agent or Attorney shall first make oath in writing, that the amount of the debt or sum demanded is actually due, and also that the party from whom it is due, is actually removing out of the State, or resides beyond the limits thereof, or absconds or conceals himself or is removing his property beyond the limits of the State, or secreting or fraudulently disposing of the same, for the purpose of avoiding

the payment of his just debts." Vide Thomp. Dig., 367, Sec. 1, Par. 2.

At page 369 of the Digest, Sec. 3, Par. 3, it is further provided, that "the Courts respectively to which such attachments are returnable, shall be always open for the purpose of hearing and determining motions for dissolving such attachments; and in such cases, upon oath made and tendered to the Court, that the allegations in the plaintiff's affidavit are untrue, either as to the debt or sum demanded, or as to the special cause assigned, whatever it may be, for granting the attachment, then in every such case, it shall be the duty of the Court to hear evidence upon the issue so presented, and if in the opinion of the Court, the allegations in the plaintiff's affidavit are not sustained and proved to be true, the said attachment shall be dissolved : *Provided,* that if the party defendant shall demand the same, a jury shall be empanelled to try the issue joined as aforesaid."

The Statute also provides for the issuing of writs of attachment in cases where the debt may not have become due, but as that provision is not applicable to this case it is unnecessary to advert to it. Under the provision last cited, the defendant at the term of the Court to which the writ had been made returnable, filed his affidavit, alleging therein, that the ground as set forth in the affidavit and upon which the writ of attachment had issued, to wit: " that he the defendant, George Langford, was at the time set forth in the plaintiffs' affidavit, fraudulently disposing of his property for the purpose of avoiding the payment of his just debts," was untrue. Issue was thereupon joined, and a jury empannelled to try the same ; who having heard

3

the evidence and considered upon their verdict, " returned that the defendant was not fraudulently disposing of his property to avoid the payment of his just debts," and judgment was entered accordingly.

The first error assigned is, " that the Court erred in refusing a continuance." At common law, the granting or refusing of a continuance, is a matter exclusively within the discretion of the *nisi prius* Judge and not examinable upon writ of error. But our Statute (Pamphlet Laws 100, Sec. 1,) has altered the practice in that particular, and that matter may now be assigned for error in any proceedings occurring in the Courts of our State (Vide Dawkins vs. Carrol, 5 Fla. Rep., 407.) It appears by the record that the plaintiff moved the Court for a continuance of the case to the next term, and based his motion upon the usual affidavit; and in order to determine upon the propriety of the ruling, it becomes necessary to refer to the contents of the same.

The affidavit is drafted with skill and precision and contains all the usual requirements. It is based upon the absence of a material witness, and sets forth fully and clearly the facts expected to be testified to, by said witness, as follows : " that he expected to be able to prove by said witness, that defendant proposed to said witness to claim his (defendant's) horse, to prevent said horse from being taken for defendant's debts ; and that said proposition was made to said witness but a few days or a week before the attachment suit was commenced."

Had it not been for the point made in the argument, we should have been at a loss to discover the ground upon which the ruling of the Court below, refusing the *motion* for continuance was based, for it appears to us that the af-

Hardee & Co. *vs.* Langford.—Opinion of Court.

fidavit, was ample and sufficient for the attainment of the object contemplated.

The counsel for the Appellee, cited Thomp. Dig., 370, Sec. 3, Par. 4, and founding an argument upon the peculiar phraseology of that paragraph, contended that the affidavit was insufficient in this—that it did not show that the matter of fact to be testified *to, transpired at the date of the affidavit* upon which the writ of attachment was issued, but that it did show affirmatively, that the fact, if it did occur, transpired several days prior to that date. That the terms of the Statute are peremptory, that " on the trial of any such motion, the evidence shall be confined strictly and exclusively to the state of facts alleged in the plaintiff's affidavit, *as they existed at the time of issuing the attachment ;*" and consequently, that the ruling, refusing to grant the continuance, was correct, as the Judge would have been bound, by this peculiar provision of the Statute, to have rejected the evidence when offered, upon the ground of irrelevancy.

It is a sufficient answer to this argument, to state, that the Statute is of no force, in this case, having expired by the terms of its own limitation, long anterior to the time at which the writ of attachment was sued out.

The language of the Statute is as follows : " In all cases of attachment now pending before the Courts of this State, motions may be made, and shall be heard and decided, for dissolving the same, in the manner directed in the last preceding Section of this act ; but on the trial of any such motion the evidence shall be confined strictly and exclusively to the state of facts alleged in the plaintiff's affidavit as they existed at the time of issuing the attachment."

Now it is perfectly obvious that the language of the act provides for and limits its operation exclusively to *cases*

*which were* pending before the Court at the date of the enactment.      The words are : " in all cases *now pending* before the Courts of this State."

If language affords any index of intention, it is perfectly evident that the Legislature could not have selected words more significant of their purpose.    Nor do we perceive that the argument gains any advantage or benefit, by invoking the *Spirit* of the act,  for in the very next  succeeding paragraph, ( Par., 5,)  provision is made in regard both to suits *thereafter to be commenced, and to suits then pending*.    And in regard to the correct  interpretation of the  latter  paragraph, if there were ever any doubt as to the  intention  of the Legislature, that doubt has been removed by an authoritative exposition  of the  same, in the adjudication of the case of Kennedy vs. Mitchell, (4 Fla.  Reps., 457) in which the point now under consideration arose, and was expressly decided.

Justice Semmes, in delivering the opinion of the  Court, in that case, says :  " It  is  insisted,  however, by counsel, that, under the proviso to this Section of the act,  (Par. 5,) the motion to dissolve the  attachment,  must  be  made  at or before the first  term of  the Court to which the suit is brought, in order that a dissolution of the attachment shall operate as an abatement of the suit and authorize the Court in dismissing it.     We are of a different opinion. It is very manifest that the proviso refers to the latter clause  of  the 5th Article of the Act, having reference to causes *then* pending and restricted the motion to dissolve, not only  to such causes, *but* to the first term of the Court *after* the  passage of the law ;  whereas, the first clause of the same Article, providing for the dissolution of  attachment before  and after plea to  the  action,  has  reference  exclusively to suits *thereafter* to be commenced."

Hardee & Co. *vs.* Langford.—Opinion of Court.

The Judge, in commenting upon the peculiarity of the provision, remarks : " To give this Statute a different construction, would be at variance with its letter and spirit, and render its provisions inconsistent and contradictory ; and however much it is to be regretted that this special legislation in reference to cases then pending before the Courts, should have been resorted to, yet it is not the province of this Court to extend the operation of the act to cases not contemplated by the Legislature."

The present members of the Court cordially concur with their respected predecessors, in the expression of their regret that our Statute Book should ever have been soiled by legislation of so vicious and corrupting a character. But while they have thus given expression to their just indignation, a due regard for the character of the State, makes it proper to remark, that this singular Statute owes its parentage to our former Territorial organization, having been enacted in 1834, a period of eleven years anterior to the organization of our State government. It is very manifest from the concurrence of these two Sections, embraced in the same act, that it was the *intention* of the Legislature that their provisions should have reference and be applied to causes *then pending* at the date of its passage ; and it is not for this Court, however much it may condemn the motive, to disregard that intention, by giving to them a more extended operation. The argument then, predicated upon the phraseology of the said fourth paragraph of Sec. 3, entirely fails, and we are to consider the motion for the continuance, based as it is upon the contents of the plaintiffs' affidavit, as though that provision had never been incorporated into the Act.

Considered in this light, two questions are prominently

presented for our decision.   First, the *character* of the evidence necessary to convict a defendant of making "a fraudulent disposition of his property, for the purpose of avoiding the payment of his just debts "; and secondly, the particular *time* to which this evidence shall be limited.

In regard to the first point, we are of opinion, that the declarations of a party, deliberately made, afford the most potent evidence of his intention—the evidence thus furnished being ordinarily more conclusive than that derived from overt acts, for the latter may often be misinterpreted, while the former will rarely be misunderstood.    Thus to apply this doctrine to the case before us :    Supposing that the witness when produced, would testify as deposed to by plaintiff in his affidavit. He says in his affidavit for a continuance that " he expects to be able to prove by said witness that defendant proposed to said witness, to claim his (defendant's) horse, to prevent said horse from being taken for defendant's debts; " and that said proposition was made to said witness but a few days or a week before this attachment suit was commenced."    Here the proposal to place the property into the possesion of another and the avowal of the *motive* is distinctly made, and had the proposal been acceded to, the fraudulent disposition of the property, against which the Statute intended to provide, would have been fully consummated, at least so far as the act of the defendant could have effected that purpose .    Now when called upon to interpret this transfer of the possession of the property, no one could doubt the *fraudulent* character of the act, when coupled with the *avowal of the motive.*— But had there been a simple transfer of the possession by sale or otherwise, and no declaration of motive made, there might have arisen some doubt as to whether it was

made with a *fraudulent* intent, or *bona fide.*

But it has been contended by some who have essayed to construe this clause of the Statute, that it never was the design of the Legislature in making this a ground of attachment, to act upon the *intention* of the debtor, but there must exist some overt act, either in the progress of consummation, or already fully consummated. To give the clause such a construction, we think would be effectually to nullify it, and to render its operation wholly nugatory, for it would inevitably happen, that in the great majority of cases, the issuing of the writ after the "fraudulent disposal" of the property had been consummated, would produce no beneficial result. We are aware of the rule which requires that a Statute providing extraordinary remedies should always be strictly construed, but while we fully recognize the authority of that rule, we are reminded that the ordinary remedy of " *special bail,*" afforded in England for the protection of the creditor, has been entirely abolished, or rather never existed in this State, and that the nearest approximation which he has to an efficient protection, is to be found in the provisions of the attachment law; consequently, there would seem to be a propriety in relaxing somewhat, the stringency of the rule, when applied to the construction of these Statutes, whenever by so doing, the cause of justice may be advanced. From what we have said on this point, it will be perceived that the conclusion to which we have come is, that a debtor may, by his *declaration of intention,* or avowal of design, as effectually bring himself under the operation of this clause of the Statute, as he would by any overt act, either consummated or in progress of consummation.

We now address ourselves to the consideration of the

second point of enquiry, viz: "The *point of time* to which such evidence shall be limited." In determining this question, we think it a safe rule to be adopted, that the evidence, whether consisting of overt acts or mere declararations of intention, shall not have transpired at so remote a period as to prevent it becoming a part of the *res gestæ;* and to determine this, the Judge who presided at the trial must exercise a sound discretion, being governed in his conclusions by the attendant circumstances.

Applying the rule to the case before us, we do not think that a " few days " or even a "week," or more, (as was proposed to be deposed to by the absent witness,) anterior to the suing out the writ of attachment, constituted such a remoteness of time, as *of itself*, ought to have ecxluded the evidence on the ground of irrelevancy : and we feel assured that had the learned Judge who presided at the trial, not been led astray by having his attention directed to the peculiar phraseology of the 4th paragraph of the 3rd article, before referred to, he would not have hesitated to have granted the continuance prayed for, upon the showing contained in the affidavit of the plaintiff. Deeming the causes set forth, amply sufficient to sustain the motion for the continuance, we therefore sustain the first assignment of error.

As the judgment must be reversed upon the view we have taken of the error first assigned, it seems unnecessary to go into a critical investigation in regard to the remaining assignments. It may suffice to remark that the views already expressed will apply with equal force to them.

We have given the greater attention to the consideration of the point involved in this case, from the fact that it must frequently arise in practice ; and from the further consider-

ation, that the process of attachment furnishes the most efficient, and almost only protection to creditors, against the fraudulent attempts of dishonest debtors.

The judgment of the Circuit Court will be reversed with costs.